DOHNER, APPELLANT, *v.* BAILEY ET AL., APPELLEES.

(No. 1931 — Decided August 9, 1984.)

*James H. Lagos,* for appellant.
*Paul D. Malina,* for appellees.

BROGAN, P.J. This appeal arises from the December 30, 1983 judgment of the Court of Common Pleas of Clark County, Ohio, wherein defendants, Sheridan and Norma Bailey, were granted summary judgment in their favor.

Appellant, Arthur P. Dohner, is and was at all times pertinent to this matter a real estate broker licensed to do business in the state of Ohio. On December 1, 1980, appellees, Sheridan Bailey (a.k.a. Sherdan Bailey, a.k.a. Sherclam Bailey) and his wife Norma, executed an exclusive, one-year listing agreement with the appellant to sell their hotel. The agreement provided for a ten percent commission to be paid to appellant if certain conditions were met. At the insistence of Bailey, the parties to the agreement also added a cancellation clause which gave him the right to terminate the agreement under specified conditions. This clause provided that:

"This agreement may be terminated by owner at any time after 30 days from the date hereof, by 10 days notice in writing delivered to broker by registered mail, provided no negotiations are pending for the sale or exchange of the property or business; and if within a period of 12 months subsequent to such revocation, the property or business or any part thereof shall be sold or exchanged to anyone with whom the broker had thereto had contact or negotiations, the owner agrees to pay broker the commission as herein specified."

On February 22, 1981, Bailey sent a

ten-day notice of termination to appellant pursuant to the terms of the above provision. Appellant promptly responded by informing Bailey that he was presently negotiating the sale of the property with several individuals. He also requested certain financial records be furnished in order for him to complete his negotiations. Appellant maintains the requested records had not been provided resulting in the termination of the then existing negotiations. Appellees maintained the position that the agreement had been terminated by the February 22, 1981 letter and refused to pay appellant his commission.

On February 18, 1982, appellant filed his complaint alleging *inter alia* a breach of the listing agreement by the appellees thereby entitling him to a commission of $48,500. Relying upon the terms of the cancellation clause, appellees moved for summary judgment based upon the pleadings, affidavits, memoranda and depositions submitted to the court. Upon consideration thereof, the trial court found:

"* * * [c]onstruing the facts most favorably to the Plaintiff, that there is no genuine issue of any material fact and that reasonable minds can reach but one conclusion which is adverse to Plaintiff and Defendants are entitled to Summary Judgment as a matter of law."

From this judgment appellant has timely perfected this appeal and submits for our review the following single assignment of error:

"The trial court committed prejudicial error when it granted the defendant-appellees' motion for summary judgment despite the fact that there were a number of material facts in dispute."

The granting of summary judgment is appropriate only upon a demonstration by the moving party, (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64 [8 O.O.3d 73]. See, also, *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150 [66 O.O.2d 311]. It is appellant's position the trial court improperly applied this standard in reviewing the record below.

Appellant asserts there were material issues of fact in dispute thereby rendering the granting of summary judgment inappropriate. Appellant maintains the dispute over whether negotiations were taking place at the time the notice of termination was delivered is material to the disposition of this matter. Appellees maintain on the other hand that the contract between the respective parties did not become binding until the appellant had actually secured a purchaser. Alternatively, appellees maintain the termination was effective as no negotiations were taking place as that term was understood by the parties. The trial court's judgment entry is of no assistance to this court in our effort to review the propriety of its action as it merely concluded summary judgment was appropriate without providing reasons therefor. Our task of reviewing the judgment has consequently been made more difficult.

Initially, we will address appellees' claim that the contract was not binding as the broker had not actually secured a purchaser at the time of termination. It is appellees' position that the broker's contract involved was merely a unilateral offer under which no consideration passes until the broker effectuates an acceptance by finding a purchaser for the premises, citing *Brenner* v. *Spiegle* (1927), 116 Ohio St. 631; and *Cramer* v. *Paterson* (1926), 25 Ohio App. 130. A review of the applicable case law reveals this argument is without merit.

As concerns brokers, there are fundamentally three types of existing contracts of which the "exclusive agency" contract and "exclusive right to sell" contract are pertinent to our review. Under the exclusive agency contract, the broker becomes the exclusive agent of the owner. Thus, the broker may sell and obtain his commission to the exclusion of all other brokers. However, under such an agreement, the seller reserves the right to sell the property himself without incurring an obligation to pay the broker's commission. See 10 Ohio Jurisprudence 3d (1979) 114, Brokers, Section 81. Thus, a condition precedent to the broker's entitlement to his commission is that he be the procuring cause of the sale. In *Brenner* v. *Spiegle, supra,* upon which appellees rely, the court in discussing an oral exclusive *agency* agreement stated in *dictum*:

"* * * that the contract is unilateral; that the acceptance is the doing of the act contemplated (in this case securing of the purchaser), and that there is no mutuality, no consideration, and no binding obligation, and hence no contract prior to acceptance."

An exclusive right to sell contract differs in that in addition to granting the broker the right to sell to the exclusion of all other brokers, the seller also gives the broker the right to sell for the period of the contract even to the exclusion of the seller himself. Thus, should the property be sold during the term of the agency, the broker would be entitled to his commission regardless of whether or not he was the procuring cause of the sale. See 10 Ohio Jurisprudence 3d, *supra,* at Section 81. Such provisions have been construed to provide adequate consideration by part performance on behalf of the broker, despite his failure to bring about the sale. See *Stroffregen* v. *Roney* (App. 1933), 15 Ohio Law Abs. 118. The rationale of such a distinction appears to rest upon the premise the owner/seller agreed to compensate the broker for his efforts in attempting to procure a purchaser.

In *Bell* v. *Dimmerling* (1948), 149 Ohio St. 165 [36 O.O. 505], the court in its syllabus stated:

"A written instrument, signed by the owner of real estate and accepted by a licensed real estate agent, which provides in substance that *in consideration of the agreement of the agent to use his efforts to find a purchaser* for such real estate he shall have the exclusive right for a specified time to sell the same and if the same is sold during such time the owner will pay a stated commission, becomes a contract binding on the owner when the agent does in fact use his efforts to find a purchaser, and if the owner sells the property during the time specified, he is liable to the agent for the payment of the stated commission." (Emphasis added.)

The expending of some effort therefore becomes a condition precedent to a valid contract. Once that condition is met, the consideration is supplied. See *Mooney* v. *Green* (1982), 4 Ohio App. 3d 175. Thus, where the parties enter into an exclusive right to sell contract, mutual obligations arise once the broker begins to exert time, effort and expense to seek out a prospective purchaser of the property. The seller no longer has the unfettered discretion to defeat a broker's expectation for compensation by revoking prior to an actual sale.

In the present matter, the contract in dispute clearly indicates it was an exclusive right to sell rather than a mere exclusive agency. The language of the agreement is similar to that in both *Bell, supra,* and *Mooney, supra,* wherein the respective courts found them to be right to sell contracts. In particular, the contract provides in pertinent part that:

"In consideration of your agreement to use your *efforts* in securing a purchaser for the above described property, I/we hereby grant you the sole and exclusive right, for a period of *one year* (365 days) from the above date * * * to

sell the above described property and/or business; * * *

"If you are successful in securing a Purchaser for my/our property and/or business, or if the same is sold or exchanged during the term of your exclusive agency, or within one year thereafter, to anyone having had negotiated with you *or with me/us* or with anyone else, directly or indirectly, with respect thereto prior to the expiration of this agency, I/we agree to pay you for your services, upon demand, a commission at the rate of 10% of the sale or exchange value of said premises and/or business." (Emphasis added.)

In light of the obvious intent of this agreement, appellees' reliance on *Brenner* v. *Spiegle, supra,* is misplaced. If appellant had begun efforts to procure a purchaser as he asserts in his affidavit submitted to the court below, sufficient consideration would have passed thereby imposing mutual obligations on the parties to the agreement. Appellees' authority to terminate was therefore controlled by the terms of the agreement itself.

Pursuant to the terms of the cancellation clause, the sellers could terminate the exclusive existing agreement by giving ten days' notice of their intent to do so "provided no negotiations are pending for the sale or exchange of the property or business." Appellant submits he was in negotiations at the time the notice was delivered thereby negating appellees' attempt to terminate the agreement. He further maintains appellees failed to supply the necessary records of their business when requested, resulting in the termination of the then ongoing negotiations. Appellant argues such conduct constituted a breach of the agreement, thereby entitling him to his commission.

Appellees dispute appellant's assertion that negotiations were taking place at the time notice of termination was delivered. It is their position that "negotiation" requires the existence of an offer by a prospective purchaser. They argue appellant's activities constituted nothing more than mere contact as opposed to actual negotiations. In light of the undisputed fact no offer had been conveyed to them, appellees maintain no negotiations took place. We are therefore confronted with the task of construing what the parties meant by the inclusion of the word "negotiation" in the agreement.

The disputed term has been defined as:

"The deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction." Black's Law Dictionary (5 Ed. 1979) 934.

The first clause of this definition apparently supports the appellees as the requirement of "a proposed agreement" implies an offer is already pending. The second clause seems less restrictive in that it merely requires the parties be in the act of arranging the terms of a sale. Thus, a seller's offer to sell could be sufficient to establish "negotiations" between a prospective buyer without that buyer actually making an offer to purchase. The subject matter of the negotiation is the sale, whether initially proposed by buyer or seller.

In the absence of a plain, unequivocal meaning for the term we must look to the four corners of the agreement for assistance in ascertaining what the parties meant by the use of the term. In so doing we must agree with the appellees' position on the matter.

The final paragraph of the agreement provided:

"The OWNER further represents that all statements made with reference to the déscription of the business above to the BROKER are true and are made for the purpose of inducing the BROKER to sell same. The OWNER

further *agrees to exhibit actual records of his business* to any prospective purchaser verifying the gross sales and the net profits as set forth in this contract, and if the OWNER fails, refuses, or neglects, or is unable to do so and *as a result thereof such prospective purchaser withdraws his offer to purchase,* then the OWNER agrees to pay the BROKER the commission herein specified as upon fulfillment of this contract." (Emphasis added.)

By the very terms of the agreement the owner incurs no obligation to pay the broker's commission for his failure to provide the necessary records *unless* a prospective purchaser has already made an offer. This language implies the parties had contemplated that the "negotiation" process must have proceeded beyond mere discussion before any potential liability of the owner would attach. Reading this paragraph in conjunction with the cancellation clause, it becomes apparent that the parties intended the term "negotiation" to include something more than mere contacts or discussion; rather, they intended such to include the existence of an actual offer from a prospective purchaser. As it is undisputed no offer had been made, appellees were well within their rights to terminate the agreement.

It is also undisputed that appellees chose not to sell the property and that the property was not sold within twelve months of the termination. In fact, appellees apparently still own the motel property. Having effectively terminated the listing agreement without subsequently selling the property within the following year to someone "with whom the broker had thereto had contact or negotiations," appellees had no obligation to pay appellant a commission. In light of the above, we are of the opinion the trial court acted properly in granting appellees' motion for summary judgment.

Appellant's single assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WEBER, JJ., concur.